**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO: 3:15-cv-176**

| | |
|---|---|
| Antonio Stukes,<br><br>                           **Plaintiff,**<br><br>**v.**<br><br>**DEBRA ANTNEY,** *individually* and as *Owner/Member/Manager/CEO* of Mizay Entertainment Inc.; Mizay Music Group LLC; Be100 America, LLC; Be100 Radio LLC; Daganda Entertainment LLC; Mizay Publishing LLC; and Mizay Management LLC**,**<br><br>**Mizay Entertainment Inc.,**<br><br>**Mizay Music Group LLC,**<br><br>**Be100 America, LLC,**<br><br>**Be100 Radio LLC,**<br><br>**Daganda Entertainment LLC,**<br><br>**Mizay Publishing LLC,**<br><br>**and**<br><br>**Mizay Management LLC,**<br><br>                           **Defendants.** | **COMPLAINT**<br>**(Jury Trial Demanded)** |

Plaintiff, Antonio Stukes, hereby alleges and complains of the Defendants as follows:

<u>**NATURE OF ACTION**</u>

1.      This is an action brought by Plaintiff Antonio Stukes for appropriate relief for the damages suffered due to Defendants' fraudulent conduct to evade paying a lawful judgment.

1

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332. There is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §1391. Plaintiff is domiciled in the Western District of North Carolina, specifically, Mecklenburg County, North Carolina. Further, the Judgment that is the subject of this action was entered in North Carolina State Superior Court, Mecklenburg County, which is within the Western District of North Carolina.

## PARTIES

4.      **Plaintiff, Antonio Stukes** is a citizen of the State of North Carolina and the United States of America.

5.      Plaintiff's true, fixed and permanent home, to which he has the intention of returning is Charlotte, Mecklenburg County, North Carolina.

6.      Upon information and belief, **Defendant Debra Antney ("Defendant Antney")** is a citizen of the United States and a resident of McDonough, Henry County, Georgia.

7.      North Carolina has Personal Jurisdiction over Defendant Antney pursuant to North Carolina's Long Arm Statute, N.C. Gen. Stat. §75-4. Defendant Antney has substantial and continuous contacts with the State of North Carolina in the course of her commercial activities. Filing suit against Defendant Antney does not offend traditional notions of fair play and substantial justice.

8.      Upon information and belief, Defendant Antney **individually** and as **Owner/Member/Manager/CEO** of Mizay Entertainment Inc., Mizay Music Group LLC, Be100 America, LLC, Be100 Radio LLC, Daganda Entertainment LLC, Mizay Publishing LLC, and

2

d/b/a Mizay Management LLC, has and maintains individual and business contacts within the State of North Carolina.

9.     Defendant Antney, in her individual and business capacity, has visited the State of North Carolina.  As recently as January of 2014, Defendant Antney was in Charlotte, North Carolina recruiting music artists with the express goal of achieving commercial gain/profit.

10.     Defendant Antney, in her individual and business capacity, advertises herself to customers and consumers in the State of North Carolina.

11.     Upon information and belief, **Defendant Mizay Entertainment Inc. ("Defendant Mizay Entertainment")** is a corporation organized and existing under the laws of the State of Georgia.  Defendant Mizay Entertainment is a Georgia limited liability company that may be served with process in this action by service upon its registered agent, Adamma McKinnon, at its registered agent office c/o Genesis 3500 Lenox Road NE, Suite 1500 Atlanta, Georgia 30326.

12.     North Carolina has Personal Jurisdiction over Defendant Mizay Entertainment pursuant to North Carolina's Long Arm Statute, N.C. Gen. Stat. §75-4.  Defendant Mizay Entertainment has substantial and continuous contacts with the State of North Carolina in the course of their commercial activities.  Filing suit against Defendant Mizay Entertainment does not offend traditional notions of fair play and substantial justice.

13.     Defendant Mizay Entertainment was previously sued in Mecklenburg County, North Carolina and did not contest personal jurisdiction.  Further, Judgment was entered against Defendant Mizay Entertainment in Mecklenburg County, North Carolina on December 27, 2012 in the amount of $251,000.00 (the "North Carolina Judgment") (See Exhibit "1" attached to this Complaint).

14.     Defendant Mizay Entertainment is currently categorized by the Georgia Secretary of

3

State, Corporations Division as Active, but in non-compliance. Upon information and belief, Defendant Mizay Entertainment has not filed the required annual reports with the Georgia Secretary of State, Corporations Division since 2013.

15.     Upon information and belief, at all times relevant to the subject matter of this Complaint (dating back at least to 2011), Defendant Antney exercised such control over Defendant Mizay Entertainment that Defendant Mizay Entertainment was a mere instrumentality, alter ego or tool of Defendant Antney.

16.     Upon information and belief, **Defendant Mizay Music Group LLC ("Defendant Mizay Music Group")** is a corporation organized and existing under the laws of the State of Georgia. Defendant Mizay Music Group is a Georgia limited liability company that may be served with process in this action by service upon its registered agent, Adamma McKinnon, at its registered agent office located at 7922 Clayton Rd, Jonesboro, Georgia 30236.

17.     Defendant Mizay Music Group was registered with the Georgia Secretary of State on November 19, 2013.

18.     Defendant Mizay Music Group is the successor to Defendant Mizay Entertainment.

19.     North Carolina has Personal Jurisdiction over Defendant Mizay Music Group pursuant to North Carolina's Long Arm Statute, N.C. Gen. Stat. §75-4. Defendant Mizay Music Group has substantial and continuous contacts with the State of North Carolina in the course of their commercial activities. Filing suit against Defendant Mizay Music Group does not offend traditional notions of fair play and substantial justice.

20.     Defendant Mizay Music Group advertises their services to the entire country, without territorial restriction, on the internet. Defendant Mizay Music Group seeks to work with artists and performers across the country and service customers throughout the United States and

4

worldwide. Defendant Mizay Music Group, upon information and belief, maintains relationships with concert venues and/or promoters within the State of North Carolina.

21.     Defendant Mizay Music Group was on tour and conducting business in Charlotte, North Carolina on January 14 and January 15, 2015. Defendant Antney, as a representative of Defendant Mizay Music Group, was also in Charlotte, North Carolina on or about January 14, 2015, giving media interviews and attending casting calls for Defendant Mizay Music Group's new reality show, which allows hip-hop artists to compete for the chance to win a recording contract with Defendant Mizay Music Group.

22.     Upon information and belief, at all times relevant to the subject matter of this Complaint, Defendant Antney exercised such control over Defendant Mizay Music Group that Defendant Mizay Music Group was a mere instrumentality, alter ego or tool of Defendant Antney.

23.     Upon information and belief, **Defendant Be100 America, LLC ("Defendant Be100 America")** is a corporation organized and existing under the laws of the State of Georgia. Defendant Be100 America is a Georgia limited liability company that may be served with process in this action by service upon its registered agent, Defendant Debra Antney, at its registered agent office 7922 Clayton Road, Jonesboro, Georgia 30236.

24.     Defendant Be100 America was registered with the Georgia Secretary of State on December 2, 2014.

25.     Upon information and belief, Defendant Be100 America is a subsidiary, or, in the alternative, a sister-company to Defendant Mizay Music Group, which is the successor to Defendant Mizay Entertainment.

26.     North Carolina has Personal Jurisdiction over Defendant Be100 America pursuant to North Carolina's Long Arm Statute, N.C. Gen. Stat. §75-4. Defendant Be100 America has

substantial and continuous contacts with the State of North Carolina in the course of their commercial activities. Filing suit against Defendant Be100 America does not offend traditional notions of fair play and substantial justice.

27.     Upon information and belief, Defendant Be100 America was on tour and conducting business in Charlotte, North Carolina on January 14 and January 15, 2015. Defendant Antney, as a representative of Defendant Be100 America, was also in Charlotte, North Carolina on or about January 14, 2015, giving media interviews and attending casting calls for Defendant Be100 America's new reality show, which allows hip-hop artists to compete for the chance to win a recording contract with Defendant Mizay Music Group.

28.     Upon information and belief, at all times relevant to the subject matter of this Complaint, Defendant Antney exercised such control over Defendant Be100 America that Defendant Be100 America was a mere instrumentality, alter ego or tool of Defendant Antney.

29.     Upon information and belief, **Defendant Be100 Radio LLC ("Defendant Be100 Radio")** is a corporation organized and existing under the laws of the State of Georgia. Defendant Be100 Radio is a Georgia limited liability company that may be served with process in this action by service upon its registered agent, Adamma McKinnon, at its registered agent office 7922 Clayton Road, Jonesboro, Georgia, 30236.

30.     Defendant Be100 Radio provides a platform for independent artists to get their music to the masses.

31.     North Carolina has Personal Jurisdiction over Defendant Be100 Radio pursuant to North Carolina's Long Arm Statute, N.C. Gen. Stat. §75-4. Defendant Be100 Radio has substantial and continuous contacts with the State of North Carolina in the course of their commercial activities. Filing suit against Defendant Be100 Radio does not offend traditional

6

notions of fair play and substantial justice.

32.    Defendant Be100 Radio is an online radio station which broadcasts to the entire country, without territorial restriction, on the internet.

33.    Defendant Be100 Radio regularly broadcasts to citizens and residents of the state of North Carolina.

34.    Upon information and belief, at all times relevant to the subject matter of this Complaint, Defendant Antney exercised such control over Defendant Be100 Radio that Defendant Be100 Radio was a mere instrumentality, alter ego or tool of Defendant Antney.

35.    Upon information and belief, **Defendant Daganda Entertainment LLC ("Defendant Daganda")** is a corporation organized and existing under the laws of the State of Georgia.  Defendant Daganda is a Georgia limited liability company that may be served with process in this action by service upon its registered agent, Adamma McKinnon, at its registered agent office c/o Genesis 3500 Lenox Road NE, Suite 1500 Atlanta, Georgia 30326.

36.    Defendant Daganda was registered with the Georgia Secretary of State on September 20, 2013.

37.    Upon information and belief, Defendant Daganda is a successor to Defendant Mizay Entertainment.

38.    North Carolina has Personal Jurisdiction over Defendant Daganda pursuant to North Carolina's Long Arm Statute, N.C. Gen. Stat. §75-4.  Defendant Daganda has substantial and continuous contacts with the State of North Carolina in the course of their commercial activities.  Filing suit against Defendant Daganda does not offend traditional notions of fair play and substantial justice.

39.    Upon information and belief, at all times relevant to the subject matter of this

7

Complaint, Defendant Antney exercised such control over Defendant Daganda that Defendant Daganda was a mere instrumentality, alter ego or tool of Defendant Antney.

40.     Upon information and belief, **Defendant Mizay Publishing LLC ("Defendant Mizay Publishing")** is a corporation organized and existing under the laws of the State of Georgia.  Defendant Mizay Publishing is a Georgia limited liability company that may be served with process in this action by service upon its registered agent, Adamma McKinnon, at its registered agent office located at 7922 Clayton Rd, Jonesboro, Georgia 30236.

41.     North Carolina has Personal Jurisdiction over Defendant Mizay Publishing pursuant to North Carolina's Long Arm Statute, N.C. Gen. Stat. §75-4.  Defendant Mizay Publishing has substantial and continuous contacts with the State of North Carolina in the course of their commercial activities.  Filing suit against Defendant Mizay Publishing does not offend traditional notions of fair play and substantial justice.

42.     Upon information and belief, at all times relevant to the subject matter of this Complaint, Defendant Antney exercised such control over Defendant Mizay Publishing that Defendant Mizay Publishing was a mere instrumentality, alter ego or tool of Defendant Antney.

43.     Upon information and belief, **Defendant Mizay Management LLC ("Defendant Mizay Management")** is a corporation organized and existing under the laws of the State of Georgia.  Defendant Mizay Management is a Georgia limited liability company that may be served with process in this action by service upon its registered agent, Adamma McKinnon, at its registered agent office located at 7922 Clayton Rd, Jonesboro, Georgia 30236.

44.     North Carolina has Personal Jurisdiction over Defendant Mizay Management pursuant to North Carolina's Long Arm Statute, N.C. Gen. Stat. §75-4.  Defendant Mizay Management has substantial and continuous contacts with the State of North Carolina in the course

of their commercial activities. Filing suit against Defendant Mizay Management does not offend traditional notions of fair play and substantial justice.

45.     Upon information and belief, at all times relevant to the subject matter of this Complaint, Defendant Antney exercised such control over Defendant Mizay Management that Defendant Mizay Management was a mere instrumentality, alter ego or tool of Defendant Antney.

46.     Henceforth, Defendants Mizay Entertainment, Mizay Music Group, Defendant Be100 America, Defendant Be100 Radio, Mizay Management, Mizay Publishing and Daganda will collectively be referred to as **"Corporate Defendants."**

## FACTUAL BACKGROUND

47.     On Saturday, February 16, 2011, Rapper Juaquin Malphurs aka Waka Flocka Flame was in Charlotte, North Carolina in order to have the stereo equipment on his tour bus worked on and/or installed at a retailer on Independence Boulevard at 2:00 in the afternoon.

48.     Mr. Malphurs mingled with the general public and signed autographs as requested. Mr. Malphurs was managed by Defendant Mizay Entertainment who hired a security detail to protect Mr. Malphurs at public events. The security detail was supervised by Defendant Mizay Entertainment, who created and instilled various procedures and protocols on how the security detail was to act in various situations. These procedures and protocols allowed the security detail to be armed at all times and to fire weapons as needed.

49.     At approximately 2:00pm, Plaintiff received a telephone call from a friend advising that Mr. Malphurs was in town, socializing with fans and signing autographs at Car Stereo Warehouse.

50.     Plaintiff and two friends decided to go meet Mr. Malphurs at Car Stereo Warehouse, as they admired his work and wanted to meet the artist.

9

51.     Plaintiff, an aspiring rap artist, brought with him a demo compact disc (CD) that contained music he had recently recorded.  Plaintiff planned to offer the CD to Mr. Malphurs, on the off chance he got the opportunity to meet Mr. Malphurs.  Plaintiff was hoping Mr. Malphurs would offer constructive feedback and, if Mr. Malphurs liked the music, potentially aid in getting the music distributed.

52.     Plaintiff and his friends drove to meet Mr. Malphurs in the vehicle of one of his friends (Vehicle One).  Along the way, Vehicle One (which contained Plaintiff) met up with another vehicle (Vehicle Two) with three other individuals, who also wanted to meet Mr. Malphurs.

53.     Subsequently, Vehicle One pulled into the parking lot of Car Stereo Warehouse and parked alongside Mr. Malphurs's tour bus.  As Plaintiff and his two friends got out of the vehicle, Plaintiff observed a member of Mr. Malphurs's security detail brandishing a large handgun.  As Vehicle Two pulled into the parking lot (prior to any of the occupants being able to exit the vehicle), this member of security, consistent with Mr. Malphurs's and Defendant Mizay's direction and policies, started shooting his gun in the general direction of Plaintiff, without provocation.

54.     The security detail admitted that they shot first without seeing a weapon on Plaintiff or his friends.

55.     Plaintiff immediately retreated toward Independence Boulevard, as he feared severe bodily harm.  Plaintiff could not seek safety in Vehicle One as it was parked next to the tour bus and the driver was not in the vehicle.  When the shooting erupted, another member of the security team exited the tour bus.  As Plaintiff was retreating towards Independence Boulevard, this second member of the security detail fired two shots from his handgun in the general direction

of Plaintiff. One of the bullets fired by the members of the security team struck Plaintiff in the shoulder.

56. At this time, Vehicle Two attempted to drive away from the dangerous scene. As Vehicle Two was exiting the parking lot, the driver noticed Plaintiff had been shot and was on the ground. Vehicle Two picked up Plaintiff, removed him from the dangerous situation and helped get him to safety. Subsequently, Plaintiff was brought to the Emergency Room to receive treatment for his wounds.

57. After the incident, the security detail tried to dispose of the two weapons involved in the altercation in the bathroom of Car Stereo Warehouse. At all times, the security detail was acting according to the policies and procedures laid out by Defendant Mizay Entertainment.

58. On or about February 17, 2011, Debra Antney, CEO, CFO and Secretary of Defendant Mizay Entertainment issued a public statement regarding the incident. Ms. Antney stated, in part, "So, I just wanted to address the incident in North Carolina….to my understanding, when this happened, there was random cars that began shooting, nobody could figure out what they were shooting at, the bus had gotten hit four times, security followed appropriate protocol and returned fire."

59. On May 13, 2011, Plaintiff filed a verified Complaint in Superior Court, Mecklenburg County, North Carolina, alleging Defendant Mizay Entertainment was liable for the actions of its employees in the shooting of Plaintiff.

60. This matter was tried during the December 17, 2012 term of Civil Superior Court of Mecklenburg County before The Honorable Calvin E. Murphy. A Mecklenburg County jury returned a verdict in the amount of $501,000.00.

61. A judgment was entered on December 27, 2012 in the amount of $251,000, plus

interest against Defendant Mizay Entertainment.

62.     A Writ of Execution was filed by the Clerk of Superior Court, Mecklenburg County, North Carolina on or about February 18, 2013.

63.     A Certificate of Partial Payment of Judgment was filed on or about July 2, 2013 in the amount of $17,233.74.

64.     No other payment towards the North Carolina Judgment has been made.

65.     On or about November 5, 2013, the State Court of Clayton County, Georgia domesticated the North Carolina Judgment.

66.     Plaintiff made many efforts to collect the judgment, but Defendant Mizay Entertainment has refused to pay.

67.     Following the partial satisfaction of Judgment, Defendant Antney ceased operations of Defendant Mizay Entertainment.

68.     Despite ceasing operations of Defendant Mizay Entertainment, Defendant Antney has continued her commercial activities as a manager of music talent.

69.     While operating Defendant Mizay Entertainment, Defendant Antney represented music artists by recruiting young, up and coming musicians, managing their careers, producing their music and marketing them to labels, among many other managerial services.

70.     After ceasing to utilize Defendant Mizay Entertainment as a corporate entity, Defendant Antney continues to represent music artists by recruiting young, up and coming musicians, managing their careers, producing their music and marketing them to labels, among many other managerial services in her individual capacity.

71.     Defendant Antney has continued to represent music artists by recruiting talent managing their careers, producing their music and marketing them to labels, among many other

12

managerial services through Defendant Mizay Music Group.

72.     Defendant Antney has continued to represent music artists by recruiting talent, managing their careers, producing their music and marketing them to labels, among many other managerial services through Defendant Be100 America.

73.     In 2013 and 2014, Defendant Antney, as a representative of Defendant Be100 America, under Defendant Music Group's banner, went on a tour of cities looking for new music talent to be managed by Defendant Antney.

74.     On or about January 14, 2014, Defendant Antney gave an interview in Charlotte, North Carolina detailing how she intended to continue discovering new talent to manage.  The news article that was published with the interview identified Defendant Antney as the "founder of Mizay Entertainment".

75.     In an article on Vice.com, published on September 22, 2014, Defendant Antney was described as "founder and CEO of Mizay Entertainment management company, star on Love & Hip Hop: Atlanta, mother of Waka Flocka Flame, and former manager to Nicki Minaj (and Gucci Mane)."

76.     On or about February 6, 2014, upon information and belief, Defendant Antney published a Facebook.com account for Defendant Mizay Music Group.  The Facebook account's "about" section states, "Music Music (sic) Group (Formerly Mizay Entertainment) is a music label based in Atlanta, GA which caters to all genres of music." (See attached Exhibit "2" to Complaint)

77.     As of the date of the filing of this Complaint, the Facebook page is still active and the "about" section is as described in the preceding paragraph.

78.     In late 2013, Defendant Antney signed a country music act named Robbinsville.

13

In an interview published on or about January 1, 2014, the musicians stated, "We signed a 360 deal with Mizay Music Group based in Atlanta…. We feel at home with Mizay Music Group and are excited to be the first country artist signed to a mostly hip-hop/rap label. We're also proud to have our music career managed by Debra Antney. She has managed and been influential to the careers of artists like Nicki Minaj, Waka Flocka and French Montana." (See attached Exhibit "3" to Complaint)

79. As evidenced by the above, Defendant Antney is currently performing the same commercial activities in the entertainment industry as she did prior to the North Carolina Judgment.

80. However, Defendant Antney has changed the name of the company she is doing business under from Mizay Entertainment to Mizay Music Group.

81. Upon information and belief, the reason Defendant Antney changed corporate entities was to avoid paying the North Carolina Judgment.

82. Defendant Antney's role as a manager of music talent is substantially the same now, as it was prior to the North Carolina Judgment.

83. Upon information and belief, Defendant Antney also uses other corporate entities, including but not limited to Defendant Mizay Music Group, Defendant Be100 America, Defendant Be100 Radio, Defendant Mizay Publishing, Defendant Mizay Management and Defendant Daganda in order to avoid running any assets through Defendant Mizay Entertainment.

84. Defendant Antney superficially changing her corporate entities for the purpose of evading the North Carolina Judgment is further evidenced by:

    a. Defendant Antney started a website dedicated to stopping

    Reckless Internet Posting. On the website, Defendant Antney

describes herself as a "Visionary, philanthropist, mogul and mother, Debra Antney is an inspiration to women around the world. Her ability to trendset and forecast the next best thing makes her an influential force in the entertainment industry. ***CEO of Mizay Music Group (formerly Mizay Entertainment)***, Antney builds superstars and creates household names, some of which have ultimately become global brands. Through relentless hard work and determination, she has positioned as major power player in a male dominated industry." *Emphasis Added* (See attached Exhibit "4" to Complaint)

b.      Defendants Registered Agent and attorney, Adamma McKinnon's Linkedin profile that lists her main title as "Attorney for Mizay Entertainment," but lists her experience as an attorney for Mizay Music Group LLC from 2010 to present, despite the fact that Mizay Music Group LLC was not formed until 2013. (See attached Exhibit "5" to Complaint)

c.      Defendant Antney published various posts on social media sites such as Instagram asking her followers to begin following Defendant Mizay Music Group. (See attached Exhibit "6" to Complaint)

d.      The Twitter handle @MizayMusicGroup, which upon information and belief is currently maintained by Defendant Mizay Music Group, has maintained an active Twitter account

15

since March of 2010 to present, despite the fact that Mizay Music

Group, LLC was not formed until 2013. Further, as recently as

November 2013, @MizayMusicGroup was using the same

account, but with the handle @MizayEnt. (See attached Exhibit

"7" to Complaint)

85.    By changing the names of her corporate entities, Defendant Antney is transparently

trying to avoid paying a judgment, while still reaping the benefits of being a prominent manager of

music talent.

86.    Based on the various descriptions on her own media platforms, Defendant Antney is

still holding herself out as a music mogul and seemingly doing the exact same work she did prior to

the North Carolina Judgment.

87.    Defendant Antney is and at all relevant times hereto, the decision maker behind all the

Corporate Defendants and uses said Corporate Defendants, upon information and belief, to shield

assets, profits and funds from Plaintiff.

88.    All of the Corporate Defendants listed in this Complaint have no independent will or

purpose, other than to attempt to shield Defendant Antney from liability.  Defendant Antney at all

times is manipulating the various Corporate Defendants as to avoid paying the North Carolina

Judgment, which Defendant Mizay Entertainment owes.


**FIRST CAUSE OF ACTION**
**Disregard of Corporate Form**
**(Defendant Antney as to All Corporate Defendants)**

89.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if

fully set forth herein.

16

90.     Upon information and belief, Defendant Antney exercised complete control and domination over Defendant Mizay Entertainment such that the corporation was the alter ego of Defendant Antney and therefore, Plaintiff is entitled to pierce the corporate veil of Defendant Mizay Entertainment.

91.     Defendant Antney utilized her control over Defendant Mizay Entertainment to perpetuate a fraud against Plaintiff and in contravention of Plaintiff's rights.

92.     Upon information and belief, Defendant Antney exercised complete control and domination over Defendant Mizay Music Group such that the corporation was the alter ego of Defendant Antney and therefore, Plaintiff is entitled to pierce the corporate veil of Defendant Mizay Music Group.

93.     Defendant Antney utilized her control over Defendant Mizay Music Group to perpetuate a fraud against Plaintiff and in contravention of Plaintiff's rights.

94.     Upon information and belief, Defendant Antney exercised complete control and domination over Defendant Be100 America such that the corporation was the alter ego of Defendant Antney and therefore, Plaintiff is entitled to pierce the corporate veil of Defendant Be100 America.

95.     Defendant Antney utilized her control over Defendant Be100 America to perpetuate a fraud against Plaintiff and in contravention of Plaintiff's rights.

96.     Upon information and belief, Defendant Antney exercised complete control and domination over Defendant Be100 Radio such that the corporation was the alter ego of Defendant Antney and therefore, Plaintiff is entitled to pierce the corporate veil of Defendant Be100 Radio.

97.     Defendant Antney utilized her control over Defendant Be100 Radio to perpetuate a fraud against Plaintiff and in contravention of Plaintiff's rights.

98.     Upon information and belief, Defendant Antney exercised complete control and domination over Defendant Daganda Entertainment such that the corporation was the alter ego of Defendant Antney and therefore, Plaintiff is entitled to pierce the corporate veil of Defendant Daganda Entertainment.

99.     Defendant Antney utilized her control over Defendant Daganda Entertainment to perpetuate a fraud against Plaintiff and in contravention of Plaintiff's rights.

100.    Upon information and belief, Defendant Antney exercised complete control and domination over Defendant Mizay Publishing such that the corporation was the alter ego of Defendant Antney and therefore, Plaintiff is entitled to pierce the corporate veil of Defendant Mizay Publishing.

101.    Defendant Antney utilized her control over Defendant Mizay Publishing to perpetuate a fraud against Plaintiff and in contravention of Plaintiff's rights.

102.    Upon information and belief, Defendant Antney exercised complete control and domination over Defendant Mizay Management such that the corporation was the alter ego of Defendant Antney and therefore, Plaintiff is entitled to pierce the corporate veil of Defendant Mizay Management.

103.    Defendant Antney utilized her control over Defendant Mizay Management to perpetuate a fraud against Plaintiff and in contravention of Plaintiff's rights.

104.    Defendant Antney's control over the Corporate Defendants and the fraud perpetrated against Plaintiff proximately caused damages to Plaintiff, in excess of ten thousand dollars ($10,000.00), in that he has been unable to recover the North Carolina Judgment against the disregarded entity of Mizay Entertainment.

## SECOND CAUSE OF ACTION
## Fraud and Deceit
## (All Defendants)

105.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

106.    The following actions committed by Defendants constitute fraud:

a.    Following the Partial Satisfaction of Judgment, Defendant Mizay Entertainment ceased operations so that no further assets and monies would be subject to the North Carolina Judgment;

b.    Defendants created Defendant Music Group for the express purpose of replacing Mizay Entertainment and avoiding the North Carolina Judgment;

c.    Defendants created Defendant Be100 America for the express purpose of replacing Mizay Entertainment and avoiding the North Carolina Judgment;

d.    Upon information and belief, Defendants created Defendant Daganda for the express purpose of replacing Mizay Entertainment and avoiding the North Carolina Judgment;

e.    Upon information and belief, Defendants moved the assets and monies of Defendant Mizay Entertainment to the other Corporate Defendants to avoid the North Carolina Judgment;

f.    Upon information and belief, Defendant Antney defunded Defendant Mizay Entertainment following the Partial Satisfaction of Judgment as to avoid the North Carolina Judgment;

g.      Other ways to be determined through discovery.

107.    Said conduct constitutes fraud.

108.    Said conduct constitutes deceit.

109.    As a proximate result of Defendants' fraudulent and deceitful acts, Plaintiff has suffered economic damages in in excess of ten thousand dollars ($10,000.00).


**THIRD CAUSE OF ACTION**
**Fraudulent Transaction, De Facto Merger and Corporate Continuation**
**(Defendant Antney, Defendant Mizay Entertainment and Defendant Mizay Music Group)**

110.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

111.    Defendant Mizay Music Group is performing the same commercial activities formerly performed by Defendant Mizay Entertainment.

112.    Defendant Mizay Music Group is the successor business to Defendant Mizay Entertainment.

113.    Defendant Mizay Music Group and Defendant Mizay Entertainment have the same ownership.

114.    The dissolution of Defendant Mizay Entertainment and the creation of Defendant Mizay Music Group is a fraudulent transaction.

115.    The dissolution of Defendant Mizay Entertainment and the creation of Defendant Mizay Music Group is a de facto merger.

116.    The dissolution of Defendant Mizay Entertainment and the creation of Defendant Mizay Music Group is a mere continuation of Defendant Mizay Entertainment's commercial

20

activities by Defendant Mizay Music Group.

117. There is substantial continuity between Defendant Mizay Entertainment and Defendant Mizay Music Group.

118. Defendant Mizay Music Group is liable for the debts of its successor entity, Mizay Entertainment.

119. Upon information and belief, Defendant Antney exercised complete control and domination over Defendant Mizay Entertainment such that the corporation was the alter ego of Defendant Antney and therefore, Plaintiff is entitled to pierce the corporate veil of Defendant Mizay Entertainment.

120. Defendant Antney utilized her control over Defendant Mizay Entertainment to perpetuate this fraudulent transaction, de facto merger and corporate continuation to the detriment of Plaintiff and in contravention of Plaintiff's rights.

121. Defendant Antney utilized her control over Defendant Mizay Music Group to perpetuate this fraudulent transaction, de facto merger and corporate continuation to the detriment of Plaintiff and in contravention of Plaintiff's rights.

122. As a proximate result of Defendants' fraudulent transfer, de facto merger and corporate continuation, Plaintiff has suffered economic damages in in excess of ten thousand dollars ($10,000.00).

<u>**FOURTH CAUSE OF ACTION**</u>
<u>**Fraudulent Transfer with Intent to Delay, Hinder and Defraud**</u>
**(Defendant Antney, Defendant Mizay Entertainment and Defendant Mizay Music Group)**

123. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

124.     The transfer of the assets of Defendant Mizay Entertainment to Defendant Mizay Music Group was made with the actual intent to hinder, delay or defraud Plaintiff in collecting the North Carolina Judgment.

125.     Defendant Antney knew that the amount of consideration Defendant Mizay Music Group paid for the assets, if any, was far below their reasonable equivalent value.

126.     Defendant Mizay Entertainment, Defendant Mizay Music Group and Defendant Antney's actions with respect to the fraudulent transfer of assets from Defendant Mizay Entertainment to Defendant Mizay Music Group were knowing and intentional.

127.     As a proximate result of Defendants' fraudulent transfer, Plaintiff has suffered economic damages in in excess of ten thousand dollars ($10,000.00).

**FIFTH CAUSE OF ACTION**
**Punitive Damages**
**(Defendant Antney)**

128.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

129.     Pursuant to N.C.G.S. 1D, *et. seq.,* Plaintiff contends that punitive damages are required to punish Defendant Antney for her wrongful acts and to deter Defendant Antney and others from committing similar wrongful acts.

130.     Defendant Antney did act intentionally, maliciously, willfully, wantonly and in reckless disregard to the rights of Plaintiff by committing fraud in the dissolution and creation of corporate entities to avoid paying the North Carolina Judgment that Defendant Mizay Entertainment rightfully owed.

131.     Under the circumstances of this case, in determining punitive damages, the Court should consider evidence that relates to the following:

a. The reprehensibility of the Defendant's motives and conduct;

b. The likelihood at the relevant time of serious harm to Plaintiff;

c. The degree of the Defendant's awareness of the probable consequences of their conduct;

d. The duration of the Defendant's conduct;

e. The actual damages suffered by Plaintiff;

f. Any concealment by the Defendant of the facts or consequences of their conduct;

g. The existence and frequency of any similar past conduct by the Defendant;

h. Whether the Defendant profited by the conduct;

i. The Defendant's ability to pay punitive damages as evidenced by their revenues or net worth.

132. As a direct, proximate result of the aforesaid fraudulent conduct of Defendant Antney, Plaintiff has been damaged in an amount in excess of $10,000.00 in punitive damages.

## JURY TRIAL DEMANDED

Plaintiff requests a jury trial of all claims and matters set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Antonio Stukes respectfully prays for judgment against the Defendants as follows:

1. For a money judgment against all Defendants, for fraud and deceit; fraudulent

23

transaction, de facto merger and corporate continuation; and fraudulent transfer, including but not limited to the amount of the current balance of the North Carolina Judgment including all applicable interest at the legal rate, cost of all collection efforts to date and any other money damages the court finds proper, in an amount in excess of $10,000, which amount shall be determined specifically at the trial of the action.

2. For Defendants to be held jointly and severally liable, as their liabilities may appear, for all money damages.

3. For a money judgment against Defendant Antney representing punitive damages under N.C.G.S. 1D, *et. seq.*, for an amount exceeding $10,000, which amount shall be determined specifically at a trial of the action.

4. Find that Defendant Mizay Music Group is a continuation of Defendant Mizay Entertainment's business and therefore Defendant Mizay Music Group is liable for Defendant Mizay Entertainment's liabilities to Plaintiff.

   a. In the alternative, find Defendant Mizay Music Group de facto merged with Defendant Mizay Entertainment and therefore Defendant Mizay Music Group is liable for Defendant Mizay Entertainment's liabilities to Plaintiff.

5. Pierce the corporate veil and hold Defendant Antney individually liable for all of Defendant Mizay Entertainment's liabilities to Plaintiff, including but not limited to the remaining balance of the North Carolina Judgment.

6. Pierce the corporate veil and hold Defendant Antney individually liable for all of Defendant Mizay Music Group's liabilities to Plaintiff, including but not limited to the remaining balance of the North Carolina Judgment.

24

7.    Pierce the corporate veil and hold Defendant Antney individually liable for all of Defendant Be100 America's liabilities to Plaintiff.

8.    Pierce the corporate veil and hold Defendant Antney individually liable for all of Defendant Be100 Radio's liabilities to Plaintiff.

9.    Pierce the corporate veil and hold Defendant Antney individually liable for all of Defendant Mizay Publishing's liabilities to Plaintiff.

10.    Pierce the corporate veil and hold Defendant Antney individually liable for all of Defendant Mizay Managements' liabilities to Plaintiff.

11.    Pierce the corporate veil and hold Defendant Antney individually liable for all of Defendant Daganda's liabilities to Plaintiff.

12.    For pre-judgment and post-judgment interest on all amounts found due to Plaintiff at the legal rate.

13.    For the court to retain jurisdiction over the action until Defendants have fully complied with the orders of the court and that the court require Defendants to file such reports as may be necessary to supervise such compliance.

14.    For the costs of suit, including an award of reasonable attorney's fees pursuant to federal and state law.

15.    For such other and further relief as may be just, proper, and necessary to afford complete relief to Plaintiff and to provide Plaintiff that to which he is entitled at the time this action is tried.


**THIS THE 20th DAY OF April, 2015.**


**SEIFERFLATOW, PLLC**

By:    <u>S/ MATHEW E. FLATOW</u>
MATHEW E. FLATOW
NC State Bar No. 35282

By:    <u>S/ ADAM M. SEIFER</u>
ADAM M. SEIFER
NC State Bar No. 27325
Attorneys for Plaintiff Antonio Stukes
2319 Crescent Avenue
Charlotte, North Carolina 28207
(704) 512-0606